# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CHARLES WIRTH,

                        Petitioner,

v.

ROBERT LEGRAND,[1] et al.,

                        Respondents.

Case No. 2:17-cv-00027-RFB-VCF

**ORDER**

      Petitioner Charles Wirth, who entered an <u>Alford</u>[2] plea to two counts of open or gross lewdness and one count of attempted sexual assault, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (<u>See</u> ECF Nos. 11; 20-6.) This matter is before this court for adjudication of the merits of the remaining grounds[3] in Wirth's petition, which allege that the state district court erred in denying his motion to withdraw his guilty plea, there were issues regarding the probable cause determination made by the justice court, and his counsel failed to make him aware of the lifetime supervision consequence of his plea, to retain an investigator, to hire an expert, and to move to

---

[1] The inmate locator page on the state corrections department's website indicates Wirth is on parole. Should there be any further proceedings in this federal matter, the parties should substitute a proper current respondent in the place of Robert LeGrand. The 1976 Advisory Committee Notes to Subdivision (b) of Rule 2 of the Rules Governing Section 2254 Cases suggest the proper respondent for a petitioner who is on parole is "the particular . . . parole officer responsible for supervising the applicant, and the official in charge of the parole or probation agency, or the state correctional agency, as appropriate."

[2] <u>See</u> <u>North Carolina v. Alford</u>, 400 U.S. 25, 37–38 (1970) (holding that a defendant can enter a valid guilty plea while still maintaining his innocence where there is a factual basis for the plea and the plea is voluntary, knowing, and intelligent).

[3] This court previously dismissed grounds 4, 6, 7, 8, 9, 10 11, 12, 13, 14, and 15. (<u>See</u> ECF Nos. 44; 68.)

suppress the victim's diary. (ECF Nos. 11; 11-1.) For the reasons discussed below, this court denies the petition and a certificate of appealability.

## I.      BACKGROUND

S.P.,[4] Wirth's stepdaughter who was twelve years old at the time of the preliminary hearing in 2008, testified that in January 2007 Wirth "pulled down [her] underwear and he spit on [her] private area and started rubbing his penis on [her] private area." (ECF No. 18-12 at 11–13, 16, 19.) S.P. also testified that around Christmas 2006, Wirth "pinned [her] to a table and stuck his hand up [her] skirt and into [her] underwear." (Id. at 21.) And on another occasion around that same time, she woke up after falling asleep watching a movie "and [Wirth] was on top of [her] on his hands and knees, and was moving back and forth with his penis inside [her] vagina." (Id. at 22.) S.P. told Wirth to get off her, and after he stood up, semen "squirted on [her] shirt and on [her] face." (Id. at 23.) And in the summer of 2006, S.P. testified that she was in a pool with Wirth, and he first touched her "inside [her] bathing suit bottom" and then "pushe[d her] under the water and [stuck] his penis inside [her] mouth." (Id. at 24, 26.) S.P. testified that Wirth's abuse lasted "about four to six years" and "was almost a nightly thing after [her] mom went to bed." (Id. at 27, 41.)

On July 15, 2008, the State charged Wirth with two counts of sexual assault, attempted sexual assault, and four counts of lewdness with a child under the age of fourteen. (ECF No. 18-14.) On August 5, 2008, Wirth pleaded not guilty to the charges, and a trial date was set. (ECF No. 18-18.) After jury selection began, Wirth and the State reached an agreement, and the State filed an amended information charging Wirth with open or gross lewdness, open or gross lewdness

---

[4] The Local Rules of Practice state that "[p]arties must refrain from including—or must partially redact, where inclusion is necessary—[certain] personal-data identifiers from all documents filed with the court, including exhibits, whether filed electronically or in paper, unless the court orders otherwise." LR IA 6-1(a). This includes the names of minor children, so only a child's initials should be used. Id.

second offense, and attempted sexual assault. (ECF No. 19-26.) Wirth entered a guilty plea pursuant to <u>Alford</u>. (ECF No. 19-27.)

Prior to sentencing, Wirth obtained new counsel and moved to withdraw his guilty plea. (ECF No. 19-31.) The state district court denied the request. (ECF No. 20-3 at 35.) Wirth was sentenced to 12 months for the open or gross lewdness conviction, 19 to 48 months for the open or gross lewdness second offense conviction, and 96 to 240 months for the attempted sexual assault conviction. (ECF No. 20-6.) Wirth was also sentenced to lifetime supervision and was ordered to register as a sex offender. (<u>Id.</u>) Wirth appealed, and the Nevada Supreme Court affirmed. (ECF No. 20-18.) Wirth also filed a state post-conviction petition, which was denied by the state district court and affirmed on appeal by the Nevada Court of Appeals. (ECF Nos. 20-34; 22-4; 23-19.)

## II.   GOVERNING STANDARDS OF REVIEW

### A.   Antiterrorism and Effective Death Penalty Act ("AEDPA")

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73 (2003) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405–06 (2000), and citing <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 75 (quoting <u>Williams</u>, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> at 102 (citing <u>Lockyer</u>, 538 U.S. at 75); <u>see also</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

**B.    Standard for effective-assistance-of-counsel claims**

In <u>Strickland v. Washington</u>, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Additionally, to establish prejudice under Strickland, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the Strickland prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Lafler v. Cooper, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under Strickland, establishing that the decision was unreasonable is especially difficult. See Richter, 562 U.S. at 104–05. In Richter, the United States Supreme Court clarified that Strickland and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. Id. at 105; see also Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's Strickland determination under AEDPA, both AEDPA and Strickland's deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified

that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Richter</u>, 562 U.S. at 105.

## III.   DISCUSSION

### A.   Grounds 1 and 2

In ground 1, Wirth alleges that his counsel provided ineffective assistance in violation of the Fifth, Sixth, and Fourteenth Amendments because counsel failed to make him aware of the lifetime supervision consequence of his plea. (ECF No. 11 at 4.) Although not stated specifically in ground 1, Wirth argues generally that "there was a reasonable probability that he would have chosen to go to trial" but for his counsel's unreasonable performance.[5] (<u>Id.</u> at 3.) Relatedly, in ground 2, Wirth alleges that his was deprived due process in violation of the Fifth and Fourteenth Amendments because the state district court erred in denying his motion to withdraw his plea after he became aware of the impact of lifetime supervision following his plea. (<u>Id.</u> at 6.)

### 1.   Background information

At the change of plea hearing, after the state district court canvassed Wirth, the prosecutor stated: "One thing that's not in the Memorandum of Plea Negotiation that has to be addressed . . . was he needs to understand that he is going to have to register as a sex offender and that he may in fact be subject to lifetime supervision." (ECF No. 19-27 at 15.) The state district court asked Wirth if he understood that, and Wirth replied, "Yes, ma'am." (<u>Id.</u>) This was the extent of discussion about lifetime supervision at Wirth's change of plea hearing.

---

[5] Similarly, in his motion to withdraw his guilty plea, Wirth stated that he "would not have entered this plea had he been told in advance that he would be sentenced to lifetime supervision." (ECF No. 19-31 at 7.)

Following Wirth's motion to withdraw his guilty plea, counsel stated in an affidavit that "[t]he subject of . . . lifetime supervision was thoroughly discussed and explained to Mr. Wirth on numerous occasions, both in Court and in our office at meetings we had." (ECF No. 20-2 at 3.) Counsel "specifically discussed offers and pleas in an effort to avoid triggering the . . . supervision requirements." (Id.) Shortly after signing the affidavit, counsel testified at a hearing on Wirth's motion to withdraw his guilty plea. Counsel testified that in discussing negotiations, "one of [Wirth's] primary concerns almost above potential jail time was the idea that he would potentially have to register as a sex offender so [they] talked about that on multiple occasions." (ECF No. 20-3 at 23.) Counsel also testified that although he did not believe he "discussed any certain conditions" regarding lifetime supervision because he "leave[s] that up to" parole and probation, he "explained to [Wirth] there are certainly different tiers of registration and also supervision" and "talked about some of the basic . . . requirements, staying away from schools, that sort of thing." (Id. at 24, 27.) As such, counsel testified that he and Wirth "knew that the charges to which he pled guilty to were going to be subject to lifetime supervision." (Id. at 27.)

The state district court denied Wirth's motion to withdraw his plea, explaining that it believed Wirth "was aware that he would be subject to lifetime supervision as a sex offender." (ECF No. 20-3 at 32–33.) The state district court noted that this determination was based on Wirth affirmatively answering the state district court's question regarding his understanding of the lifetime supervision provision at his change of plea hearing, counsel's affidavit that explained that he discussed the lifetime supervision provision with Wirth, and counsel's testimony that he discussed the lifetime supervision provision with Wirth. (Id. at 33.)

> **2.      History of Nevada's Lifetime Supervision law**

Nevada began imposing a special sentence of lifetime supervision on certain offenders in 1995. See Palmer v. State, 59 P.3d 1192, 1194 (Nev. 2002) ("Lifetime supervision is a mandatory special sentence imposed upon all offenders who have committed sexual offenses after September 30, 1995."). Pursuant to Nev. Rev. Stat. § 176.0931(1), "[i]f a defendant is convicted of a sexual offense, the court shall include in sentencing, in addition to any other penalties provided by law, a special sentence of lifetime supervision." This special sentence "commences after any period of probation or any term of imprisonment and any period of release on parole." Nev. Rev. Stat. § 176.0931(2). Upon a sex offender's release from parole, the State Board of Parole Commissioners "will schedule a hearing to establish the conditions of lifetime supervision." Nev. Admin. Code § 213.290(3).

Prior to 2007, Nev. Rev. Stat. § 213.1243—the statute governing the conditions of lifetime supervision—simply provided that "[t]he board shall establish by regulation a program of lifetime supervision of sex offenders to commence after any period of probation or any term of imprisonment and any period of release on parole. The program must provide for the lifetime supervision of sex offenders by parole and probation officers." 1997 Nevada Laws, ch. 203, § 7 (S.B. 359); 1997 Nevada Laws, ch. 314, § 14 (S.B. 133). Thus, instead of listing any specific conditions of supervision, Nev. Rev. Stat. § 213.1243 delegated the authority to design the lifetime supervision program to the Parole Board.

Nev. Rev. Stat. § 213.1243 was amended in 2007, 2009, and 2019. In 2007, Nev. Rev. Stat. § 213.1243 was amended to add that "the Board shall require as a condition of lifetime supervision that the sex offender reside at a location only if" the following conditions were met: (a) "[t]he residence has been approved by the parole and probation officer assigned to the person," (b) "[i]f the residence is a facility that houses more than three persons who have been released from prison,

the facility for transitional living for released offenders that is licensed pursuant to chapter 449 of NRS," and (c) "[t]he person keeps the parole and probation officer informed of his current address." 2007 Nevada Laws, ch. 418, § 5 (S.B. 354). In 2007, Nev. Rev. Stat. § 213.1243 was also amended to add that that "the Board shall require as a condition of lifetime supervision that the sex offender . . . not knowingly be within 500 feet of any place . . . that is designed primarily for use by or for children" if the sex offender "is a Tier 3 offender." 2007 Nevada Laws, ch. 528, § 8 (S.B. 471). A Tier-3 offender "is a sex offender [who] is convicted of a sexual offense . . . against a child under the age of 14 years." Id. The amendment also required the Board to "require as a condition of lifetime supervision" that a Tier-3 offender:

(a)   Reside at a location only if the residence is not located within 1,000 feet of any place, or if the place is a structure, within 1,000 feet of the actual structure, that is designed primarily for use by or for children, including, without limitation, a public or private school, a school bus stop, a center or facility that provides day care services, a video arcade, an amusement park, a playground, a park, an athletic field or a facility for youth sports, or a motion picture theater.

(b)   As deemed appropriate by the Chief, be placed under a system of active electronic monitoring that is capable of identifying his location and producing, upon request, reports or records of his presence near or within a crime scene or prohibited area or his departure from a specified geographic location.

(c)   Pay any costs associated with his participation under the system of active electronic monitoring, to the extent of his ability to pay.

Id. However, these 2007 amendment also provided that "[t]he Board is not required to impose" these conditions "if the Board finds that extraordinary circumstances are present and the Board states those extraordinary circumstances in writing." Id. And in 2009, Nev. Rev. Stat. § 213.1243 was amended to add that "[t]he Board shall require as a condition of lifetime supervision that the sex offender not have contact or communicate with a victim of the sexual offense or a witness who testified against the sex offender." 2009 Nevada Laws, ch. 300, § 2 (A.B. 325).

In 2016, in response to the Board imposing conditions not enumerated in Nev. Rev. Stat. § 213.1243 on lifetime supervision offenders, the Nevada Supreme Court ruled that the Parole Board could not impose conditions beyond those listed in Nev. Rev. Stat. § 213.1243. McNeill v. State, 132 Nev. 551, 555, 375 P.3d 1022, 1025 (2016).

In 2019, Nev. Rev. Stat. § 213.1243 was amended to add that the Board shall require as a condition of lifetime supervision that the offender:

    (a)    Participate in and complete a program of professional counseling approved by the Division, unless, before commencing a program of lifetime supervision, the sex offender previously completed a program of professional counseling recommended or ordered by the Board or the court upon conviction of the sexual offense for which the sex offender will be placed under a program of lifetime supervision.

    (b)    Not use aliases or fictitious names.

    (c)    Not possess any sexually explicit materials that is harmful to minors as defined in NRS 201.257.

    (d)    Not enter, visit or patronize an establishment which offers a sexually related form of entertainment as its primary business.

    (e)    Inform the parole and probation officer assigned to the sex offender of any post office box used by the sex offender.

2019 Nevada Laws, ch. 386, § 1 (S.B. 8). In 2019, Nev. Rev. Stat. § 213.1243 was also amended to add that "[i]f the sex offender is convicted of a sexual offense involving the use of the Internet, the Board shall require, in addition to any other condition imposed pursuant to this section, that the sex offender not possess any electronic device capable of accessing the Internet and not access the Internet through any such device or any other means." Id. There are certain exceptions to this condition. In 2019, Nev. Rev. Stat. § 213.1243 was also amended to add that "[i]f the sex offender is convicted of a sexual offense involving the use of alcohol, marijuana or a controlled substance, the Board shall require . . . that the sex offender participate in an complete a program of counseling pertaining to substance abuse." Id.

**3.**    **State court determination**

In affirming Wirth's judgment of conviction, the Nevada Supreme Court held:

> Appellant Charles Wirth argues that the district court erred by denying his presentence motion to withdraw his guilty plea because he was not sufficiently informed that he would be subject to lifetime supervision. We disagree. A guilty plea is presumptively valid, and a defendant carries the burden of establishing that the plea was not entered knowingly and intelligently. Bryant v. State, 102 Nev. 268, 272, 721 P.2d 364, 368 (1986); see also Hubbard v. State, 110 Nev. 671, 675, 877 P.2d 519, 521 (1994). This court will not reverse a district court's determination concerning the validity of a plea absent a clear abuse of discretion. Hubbard, 110 Nev. at 675, 877 P.2d at 521. In determining the validity of a guilty plea, this court looks to the totality of the circumstances to determine if the defendant understood the consequences of the plea. State v. Freese, 116 Nev. 1097, 1105 [sic] 13 P.3d 442, 448 (2000); Bryant, 102 Nev. 268, 721 P.2d 364.

> Here, the district court heard testimony from counsel that he explained to Wirth, on numerous occasions, that lifetime supervision would be a result of pleading guilty and that Wirth was aware that it would be required. Although counsel spoke generally, and without regard to the specific conditions Wirth would be subjected to, the conditions of lifetime supervision applicable to a specific individual are not generally determination until shortly before release and therefore all that is constitutionally required is that the appellant was aware that he would be subject to the consequences of lifetime supervision before entry of the plea. Palmer v. State, 118 Nev. 823, 830-31, 59 P.3d 1192, 1197 (2002). The plea canvass also demonstrates that Wirth was aware that lifetime supervision would result. We thereby conclude that the district court did not abuse its discretion in denying Wirth's motion to withdraw his guilty plea. Crawford v. State, 117 Nev. 718, 721, 30 P.3d 1123, 1125 (2001) ("When reviewing a district court's denial of a motion to withdraw a guilty plea, this court presumes that the district court properly assessed the plea's validity, and we will not reverse the lower court's determination absent abuse of discretion.").

(ECF No. 20-18 at 2–3.)

### 4.    Analysis

This court previously determined that, although not presented as an independent constitutional claim on direct appeal, the Nevada Supreme Court had an opportunity to act on the constitutional claim for ineffective assistance of counsel stated in ground 1, thereby exhausting it for federal habeas purposes. (ECF No. 44 at 5–6.) Because the Nevada Supreme Court did not address the merits of Wirth's ineffective-assistance-of-trial-counsel claim, this court reviews

1  ground 1 de novo. See Cone v. Bell, 556 U.S. 449, 472 (2009); Porter v. McCollum, 558 U.S. 30,

2  39 (2009).

3      Wirth fails to support his assertion that counsel failed to advise him generally about the

4  lifetime supervision consequences of his plea with any evidence beyond his self-serving

5  statements. See, e.g., Womack v. Del Papa, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting an

6  ineffective-assistance-of-trial-counsel claim, in part, because "[o]ther than [the petitioner]'s own

7  self-serving statement, there [was] no evidence that his attorney" acted the way the petitioner

8  alleged). Rather, counsel affirmed in his affidavit and testified that he advised Wirth about lifetime

9  supervision. And, importantly, Wirth stated he understood that he may be subject to lifetime

10  supervision at this change of plea hearing.

11      Moreover, to the extent that Wirth argues that counsel failed to advise him about the

12  specific onerous conditions of lifetime supervision, Wirth's conditions of lifetime supervision will

13  not be determined until he is released from parole. As the history of Nev. Rev. Stat. § 213.1243

14  demonstrates, there have been numerous conditions added between 2011—when Wirth entered his

15  plea—and the present time. In fact, more conditions could potentially be added to the statute before

16  Wirth's release on parole and commencement of lifetime supervision. And importantly, up until

17  2016 when McNeill was decided, the Board was apparently regularly imposing nonenumerated

18  conditions upon lifetime supervision offenders. As such, because it appears that pretty much any

19  conditions were possible regardless of the statute pre-McNeill, counsel was not unreasonable in

20  testifying that in 2011 he did not discuss certain conditions of lifetime supervision other than the

21  basic requirements with Wirth because he leaves those conditions up to parole and probation.

22  Consequently, Wirth fails to demonstrate that counsel's "representation fell below an objective

23  standard of reasonableness." Strickland, 466 U.S. at 688; cf. Risher v. United States, 992 F.2d 982,

983 (9th Cir. 1993) ("[C]ounsel's failure to warn [the defendant] before he entered his guilty plea of the risk[s he faced at sentencing] fell below the level of professional competence required by Strickland.").

Furthermore, regarding prejudice, Wirth states generally that "he would have chosen to go to trial" but for his counsel's deficient performance. (ECF No. 11 at 3.) However, there is no showing of any reasonable probability that, had Wirth known more about lifetime supervision, he would not have pled guilty. Indeed, if Wirth had chosen to go to trial, he would have faced being convicted of two counts of sexual assault of a child under the age of 14, attempted sexual assault of a child under the age of 14, and four counts of lewdness with a child under the age of 14. (ECF No. 18-14.) Instead, Wirth was able to significantly limit his exposure to both time in prison[6] and more onerous lifetime supervision conditions by pleading guilty pursuant to Alford. Wirth was convicted of two counts of open or gross lewdness—the first of which was only a gross misdemeanor—and one count of attempted sexual assault. Because these convictions were not charged in the amended information as being against a child under the age of 14, Wirth will apparently not be considered a Tier-3 sex offender at the time his lifetime supervision conditions are imposed—a fact that was not assured had he chosen to go to trial and been found guilty of the charges in the original information. Based on these facts, it appears inconceivable that any of the remaining possible terms of lifetime supervision were a deciding factor driving Wirth's decision to plead guilty.

---

[6] Wirth faced imprisonment for 35 years to life for each of the charges for sexual assault of a child under the age of 14, 2 to 20 years for the charge of attempted sexual assault of a child under the age of 14, and 10 years to life for each of the four charges of lewdness with a child under the age of 14. Nev. Rev. Stat. § 200.366(3)(c), § 193.153(1)(a)(1), § 201.230(2).

Additionally, Wirth fails to articulate any specific lifetime supervision conditions that *may* be imposed by the Board when he is released from parole that he finds especially intrusive. Although this Court does not disagree that lifetime supervision "is sufficiently onerous to constitute a form [of] punishment," Palmer, 59 P.3d at 1196, it appears that the conditions that may be imposed against Wirth only amount to standard-type parole conditions:[7] need to have his residence approved, need to keep his officer informed of his address, not to contact the victim, participate in counseling, not use fictitious names, not possess sexually explicit material that is harmful to minors, not patronize a sexually related form of entertainment, and inform his officer about any post office box he uses. Therefore, Wirth fails to demonstrate "that there is a reasonable probability that, but for counsel's [alleged] errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Wirth is not entitled to federal habeas relief for ground 1.

Turning to Wirth's claim that the state district court erred in denying his motion to withdraw his plea, there is no Supreme Court case recognizing a constitutional right to withdraw a guilty plea.[8] See Carey v. Musladin, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue presented] here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" (quoting 28 U.S.C. § 2254(d)(1))). There is Supreme Court precedent, however, recognizing a right under the Due Process Clause to have one's guilty

---

[7] See, e.g., Munoz v. Smith, 17 F.4th 1237, 1238–39 (9th Cir. 2021) (finding that the following lifetime supervision conditions did "not severely and immediately restrain the petitioner's physical liberty": a monthly fee, electronic monitoring, and a requirement that the petitioner may only reside at a location if it has been approved and he keeps the officer informed of his current address).

[8] And to the extent ground 2 challenges the state district court's exercise of discretion under Nevada law, the claim is not cognizable as a federal habeas claim. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.").

plea be both knowing, intelligent, and voluntary. See Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady, 397 U.S. at 748. "[A]lthough a defendant is entitled to be informed of the direct consequences of the plea, the court need not advise him of all the possible collateral consequences." Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988) (internal quotation marks omitted); see also United States v. Delgado-Ramos, 635 F.3d 1237, 1239 (9th Cir. 2011). "The distinction between a direct and collateral consequence of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Torrey, 842 F.2d at 236 (internal quotation marks omitted). "In many cases, the determination that a particular consequence is 'collateral' has rested on the fact that it was in the hands of another government agency or in the hands of the defendant himself." Id.

To begin, lifetime supervision is "deemed a form of parole," Nev. Rev. Stat. § 213.1243(2), and the Supreme Court has never clearly established that a parole term is a direct consequences of a guilty plea of which a defendant must be advised. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary."); United States v. Timmreck, 441 U.S. 780, 783–84 (1979) (finding that a violation of Rule 11 of the Federal Rules of Criminal Procedure, which requires a district court to advise defendants of a parole term, was "neither constitutional nor jurisdictional"); cf. Lane v. Williams, 455 U.S. 624, 630 (1982) (assuming without deciding, that the failure to advise a defendant of a mandatory parole term would render a guilty plea constitutionally invalid). While the Ninth Circuit has held that mandatory parole terms are direct consequences of a guilty plea and that defendants

1  must be informed of those terms before pleading guilty, <u>Carter v. McCarthy</u>, 806 F.2d 1373, 1376

2  (9th Cir. 1986), habeas relief is not available based merely upon a failure to follow Ninth Circuit

3  law.

4      Even if this Court analyzes Wirth's claim under <u>Carter</u>, Wirth cannot prevail. Counsel

5  attested and testified that he advised Wirth about the lifetime supervision consequence generally.

6  Thus, Wirth's argument that he was not fully aware that he would be subject to lifetime supervision

7  generally as a result of his plea is belied by the record. Further, Wirth stated he understood that he

8  may be subject to lifetime supervision at his change of plea hearing. <u>See</u> <u>Blackledge v. Allison</u>,

9  431 U.S. 63, 74 (1977) (addressing the evidentiary weight of the record of a plea proceeding when

10  the plea is subsequently subject to a collateral challenge and stating that (1) the defendant's

11  representations "constitute a formidable barrier in any subsequent collateral proceedings," and (2)

12  "[s]olemn declarations in open court carry a strong presumption of verity"); <u>see also</u> <u>Muth v.</u>

13  <u>Fondren</u>, 676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a

14  strong presumption of truth.").

15      Furthermore, to the extent that Wirth argues that his plea was not intelligent because he

16  was not given notice of the specific conditions of lifetime supervision, those specific conditions of

17  lifetime supervision have yet to be determined by the Board and imposed. As such, the specific

18  conditions of Wirth's lifetime supervision are not definite or immediate and rest at the hands of

19  another governmental agency, making them merely collateral consequences of his plea. <u>Torrey</u>,

20  842 F.2d at 235–36. The state district court was not required to advise Wirth of possible collateral

21  consequences. <u>Id.</u>

22      Accordingly, the Nevada Supreme Court's determination that, after considering all the

23  relevant circumstances surrounding Wirth's plea, Wirth failed to demonstrate that his <u>Alford</u> plea

1   was invalid was neither contrary to, nor an unreasonable application of, clearly established federal

2   law and was not based on an unreasonable determination of the facts. Wirth is not entitled to federal

3   habeas relief for ground 2.

4   **B.   Ground 3**

5   In ground 3, Wirth alleges that his counsel provided ineffective assistance in violation of

6   the Fifth, Sixth, and Fourteenth Amendments because counsel failed to retain an investigator to

7   investigate the <u>Petrocelli</u> witnesses to present a better defense at the <u>Petrocelli</u> hearing, failed to

8   hire an expert who could have reviewed the victim's medical records, and failed to move to

9   suppress the victim's diary. (ECF No. 11 at 10–21.) This court divides this ground into three

10   subparts: ground 3(a), ground 3(b), and ground 3(c).

11   **1.   Ground 3(a)—investigator for <u>Petrocelli</u> witnesses**

12   **a.   Background information**

13   A <u>Petrocelli</u> hearing was held before Wirth's trial was scheduled to start, and several

14   witnesses testified. (<u>See</u> ECF No. 19-24.) First, S.D. testified that she was friends with S.P. when

15   she was around seven years old in 2001 or 2002 and once, while she was at S.P.'s residence, Wirth

16   "started tickling [her] thigh and moved up [her] shorts and . . . touched [her] girl parts." (<u>Id.</u> at 6,

17   8–9.) Second, Donna Tichgelaar, Wirth's ex-wife, testified that around 1994 or 1995 one of her

18   daughters told her that Wirth "had been raping her," and when Tichgelaar confronted Wirth, he

19   admitted the molestation. (<u>Id.</u> at 21–24, 59.) Third, H.O., Tichgelaar's daughter, testified that

20   Wirth first raped her when she was eleven or twelve years old and then raped her "[j]ust about"

21   daily for approximately two years. (<u>Id.</u> at 64, 66–67.) H.O. got pregnant and had an abortion at the

22   age of fourteen and believed Wirth was the father of the child. (<u>Id.</u> at 86.) Fourth, Tichgelaar's

23   other daughter, J.O., testified that, when she was eight years old, Wirth "used to call [her] in the

bedroom and pull [her] pants down and check [her] private areas." (Id. at 99, 102–03.) When J.O. got older, Wirth, on "[t]wenty or more" occasions, performed oral sex on J.O., made her "fondle him," made her "perform oral sex with him," and penetrated her with a sex toy. (Id. at 103–04, 106.) And on one occasion, Wirth attempted to have sexual intercourse with J.O. (Id. at 104–05.)

The state district court allowed S.D.'s testimony, excluded Tichgelaar's testimony, and limited H.O.'s testimony "to the incidents of sexual penetration" and J.O.'s testimony "to the specific incidents that she testified to in the bedroom, the den, and the kitchen." (ECF No. 19-25 at 3–6.) Wirth's counsel testified at the post-conviction evidentiary hearing that no investigation was conducted into the allegations made by the witnesses presented at the Petrocelli hearing. (ECF No. 22 at 21–23.)

### b.      State court determination

In affirming the denial of Wirth's state post-conviction petition, the Nevada Court of Appeals held:

> Wirth claims counsel was ineffective for failing to hire an investigator to interview witnesses prior to them testifying at the Petrocelli hearing. The district court concluded Wirth failed to demonstrate counsel was deficient or resulting prejudice. We conclude the district court's decision is supported by substantial evidence because Wirth failed to support his claim with specific facts that, if true, would entitle him to relief. See Hargrove v. State, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984). He failed to allege what evidence the witnesses would have provided to an investigator had the investigator been hired. Wirth also failed to demonstrate a reasonable probability he would not have pleaded guilty had counsel hired an investigator. Therefore, the district court did not err in denying this claim.

(ECF No. 23-19 at 3 (internal footnote omitted).)

### c.      Analysis

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. It is

undisputed that Wirth's counsel did not hire an investigator to investigate the Petrocelli witnesses. Counsel was not asked why he made the decision that an investigator was not needed, so it is debatable whether this decision was reasonable under Strickland.[9] Regardless, Wirth fails to demonstrate a reasonable probability that, but for not hiring an investigator to investigate the Petrocelli witnesses, he would not have pleaded guilty. Hill, 474 U.S. at 59. Indeed, it is mere speculation that hiring an investigator would have uncovered rebuttal witnesses or produced fruitful impeachment material which would have changed the state district court's ruling allowing the damaging testimony of S.D., H.O., and J.O. to be presented at trial, thereby inducing Wirth's change of plea. See Djerf v. Ryan, 931 F.3d 870, 881 (9th Cir. 2019) ("Strickland prejudice is not established by mere speculation."). Therefore, the Nevada Court of Appeals' determination that substantial evidence supported the state district court's decision regarding prejudice constitutes an objectively reasonable application of Strickland's prejudice prong. 466 U.S. at 688; see also Hill, 474 U.S. at 59. Wirth is not entitled to federal habeas relief for ground 3(a).

### 2.    Ground 3(b)—failure to retain an expert

#### a.    Background information

Wirth's Counsel moved for a psychological evaluation of S.P., and the state district court granted the motion. (ECF Nos. 18-17; 18-20.) Counsel then noticed Dr. Mark Chambers as an expert witness, noting that Dr. Chambers would "testify to the psychological examination of the victim, and the submission of his evaluation." (ECF No. 18-23.) Dr. Chambers' evaluation of S.P. provided, inter alia, that: (1) S.P. had "a long history of behavior and anger control problems that would appear to predate the earliest alleged episode of sexual abuse," (2) there "appear[ed] to be

---

[9] Notably, H.O. and J.O. were subpoenaed for the Petrocelli hearing only a week before it took place. (ECF No. 19-24 at 98, 121.)

a consensus among those that kn[e]w [S.P.] that she ha[d] a reputation for often being less than truthful regarding various matters," (3) "[r]egarding her allegations [against Wirth], testimony from individuals close to the family indicate[d] that she has recanted her allegations on several different occasions, each time explaining that she had accused her stepfather because she was 'mad' at him," (4) "[t]he many inconsistencies in [S.P.'s] accounts of the alleged sexual abuse by the defendant . . . raise questions about her veracity," (5) until the preliminary hearing S.P. never mentioned in any police statement, her diary, her sexual assault exam, or her pediatric assessment that Wirth "penetrated her vagina with his penis," and (6) S.P.'s "behavioral history strongly suggest[ed] a diagnosis of conduct disorder." (ECF No. 18-31 at 32–35.) During a pre-trial hearing, counsel stated that Dr. Chambers was "pretty much the basis of [the] defense."[10] (ECF No. 19-7 at 11–12.)

Counsel also noticed (1) Dr. Michelle Stacey,[11] noting that "Dr. Stacey will provide medical documentation of the victim's allegations of the purported incidents that did not occur," (2) the custodian of records at Sunrise Hospital and Medical Center, noting that "[d]ocumentation from medical records of the victim will be provided so [sic] show that there was no evidence of any sexual abuse," and (3) the custodian of records at Specialty Medical Center II, noting that "[t]he Custodian of Records will provide medical records of the victim." (ECF No. 18-24 at 6–7.)

### b.    State court determination

In affirming the denial of Wirth's state post-conviction petition, the Nevada Court of Appeals held:

---

[10] Following a motion by the State to exclude Dr. Chambers' testimony, the state district court ruled "that there [were] a number of things in that report that are impermissible that he cannot testify to." (ECF No. 19-19 at 34.)

[11] The State also noticed Dr. Stacey as a witness, explaining that Dr. Stacey would "testify to the level of care given to the victim." (ECF No. 18-27 at 3.)

1          Wirth claims counsel was ineffective for failing to retain an expert regarding
2   the victim's medical records. The district court concluded Wirth failed to
    demonstrate counsel was deficient or resulting prejudice. We conclude substantial
3   evidence supports the decision of the district court because Wirth failed to support
    this claim with specific facts that, if true, would entitle him to relief. [Hargrove v.
4   State, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984).] He failed to allege what
    testimony an expert would have provided to refute the medical evidence that would
5   have been presented by the State. Wirth also failed to demonstrate a reasonable
    probability he would not have pleaded guilty had counsel hired an expert.
6   Therefore, the district court did not err in denying this claim.

7   (ECF No. 23-19 at 3.)

8                           **c.      Analysis**

9          "[S]trategic decisions—including whether to hire an expert—are entitled to a 'strong

10  presumption' of reasonableness." Dunn v. Reeves, 141 S.Ct. 2405, 2410 (2021) (quoting Richter,

11  562 U.S. at 86). Here, Wirth's allegation that his counsel should have retained an expert to review

12  S.P.'s medical records fails to rebut this presumption because "the absence of evidence cannot

13  overcome" the presumption. Id. Indeed, as the state district court noted at the post-conviction

14  evidentiary hearing, there was nothing presented during the post-conviction proceedings

15  demonstrating that S.P.'s medical records would have inculpated or exculpated Wirth. (See ECF

16  No. 22 at 55.) This dearth of information regarding S.P.'s medical records and failure to

17  demonstrate what evidence an expert would have provided thereby refute Wirth's allegation that

18  counsel was deficient.[12] Moreover, counsel retained Dr. Chambers as an expert to testify about

19  S.P.'s psychological evaluation, which tended to support Wirth's defense that S.P. was making up

20  the allegations due to her hatred for Wirth. See Richter, 562 U.S. at 107 ("Counsel was entitled to

21

22  _____
    [12] And it appears that counsel was not concerned about S.P.'s medical records damaging Wirth's
23  defense because he noted on his witness list that a custodian of records from Sunrise Hospital and
    Medical Center would provide S.P.'s medical records to demonstrate that "there was no evidence
    of any sexual abuse." (See ECF No. 18-24 at 6.)

formulate a strategy that was reasonable at the time and to balance limited resources in accord with

effective trial tactics and strategies."). Accordingly, the Nevada Court of Appeals' determination

that substantial evidence supported the state district court's decision regarding a lack of deficiency

on the part of counsel constitutes an objectively reasonable application of Strickland's

performance prong. 466 U.S. at 688. Wirth is not entitled to federal habeas relief for ground 3(b).

### 3.    Ground 3(c)—lack of suppression of the diary

#### a.    Background information

S.P.'s 9-page diary[13] incriminated Wirth. (See ECF No. 19-20 at 4–8.) On August 21, 2008,

Wirth's counsel moved to compel discovery of S.P.'s "journals, papers and writings," believing

that these writings would show that she was angry "over the breakup of her parents [sic] marriage,

and [was] acting-out by falsely blaming [Wirth]." (ECF No. 18-16 at 2–3.) At a hearing on the

motion, counsel explained that the State "gave [the defense] one or two pages of her diary," but

the defense "want[ed] the whole diary." (ECF No. 18-19 at 6.) The state district court agreed,

stating "you should have access to anything that they have." (Id.; see also ECF No. 18-21.) After

the State provided the diary, counsel never moved to suppress it. (ECF No. 22 at 53.)

#### b.    State court determination

In affirming the denial of Wirth's state post-conviction petition, the Nevada Court of

Appeals held:

> Wirth claims counsel was ineffective for failing to file a motion to suppress
> the victim's diary. The district court concluded Wirth failed to demonstrate counsel
> was deficient or resulting prejudice. We conclude substantial evidence supports the
> decision of the district court because Wirth failed to support this claim with specific
> facts that, if true, would entitle him to relief. [Hargrove v. State, 100 Nev. 498, 502-
> 03, 686 P.2d 222, 225 (1984).] Further, Wirth failed to demonstrate a motion to
> suppress would have been successful, and counsel is not ineffective for failing to

---

[13] Although it was called a diary, it appears the 9-page writing was a letter from S.P. to her mother.
(See ECF No. 19-20 at 4.)

file futile motions. See Donovan v. State, 94 Nev. 671, 675, 584 P.2d 708, 711 (1978). Wirth also failed to demonstrate a reasonable probability he would not have pleaded guilty had counsel filed a motion to suppress. Therefore, the district court did not err in denying this claim.

(ECF No. 23-19 at 4.)

### c.    Analysis

During the state post-conviction evidentiary hearing, the state district court stated that it did not "know whether the diary would have come in at trial or not" because "we never got there." (ECF No. 22 at 55.) Indeed, even though counsel never moved to suppress the diary before the trial began, there is no showing that the defense would have been unable to contest the admission of the diary if the State sought to admit it at trial. See Richter, 562 U.S. at 106 ("Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach."). Further, Wirth's post-conviction counsel explained at the post-conviction evidentiary hearing that the Petrocelli "hearing was the catalyst that caused him to enter the plea." (ECF No. 22 at 11.) As such, Wirth fails to support his allegation that he would not have entered an Alford plea but for counsel's failure to file a pre-trial motion to suppress the diary. See Hill, 474 U.S. at 59. Thus, the Nevada Court of Appeals' determination that substantial evidence supported the state district court's decision regarding a lack of deficiency on the part of counsel and resulting prejudice constitutes an objectively reasonable application of Strickland's performance and prejudice prongs. 466 U.S. at 688; see also Hill, 474 U.S. at 59. Wirth is not entitled to federal habeas relief for ground 3(c).

### C.    Ground 5

In the remaining portion[14] of ground 5, Wirth alleges that he was denied due process and equal protection in violation of the Fifth, Sixth, and Fourteenth Amendments because the justice court lacked jurisdiction due to its failure to hold the requisite probable cause hearing on every charge, the justice court abused its discretion in allowing the State to amend the complaint, the information was filed more than 15 days after the preliminary hearing, and the state district court lacked jurisdiction stemming from the justice court's lack of jurisdiction. (ECF No. 11 at 45–61.)

### 1.    Background information

A criminal complaint was filed in the Justice Court of Pahrump Township on or about August 27, 2007, charging Wirth with four counts of sexual assault and five counts of lewdness with a child under the age of fourteen. (ECF No. 18-3.) A preliminary hearing was held on June 26, 2008. (ECF No. 18-12.) Following portions of S.P.'s preliminary hearing testimony, the State moved to dismiss two counts, to amend one count from sexual assault to attempted sexual assault, and to amend several counts to reflect a different date and/or different body part. (Id. at 20, 23–24, 28, 66–69.) Following S.P.'s testimony and the amendment of the criminal complaint, the justice court found "that probable cause has been shown that crimes were committed, to-wit, Count I, II, III, VI, VII, VIII, and IX of the criminal complaint, and that the defendant, Charles Matthew Wirth, committed the same." (Id. at 73.) Consequently, the justice court "order[ed] that [Wirth] be bound over to the Fifth Judicial District Court." (Id.) The justice court entered a "bindover order" on July 15, 2008. (ECF No. 18-13.) The State filed an information in state district court the same day. (ECF No. 18-14.)

### 2.    Applicable state law

---

[14] The following portion of ground 5 was previous dismissed: Wirth's counsel was ineffective for failing to challenge the state district court's jurisdiction because no probable cause hearing was conducted on each charge. (ECF No. 44 at 3.)

Nev. Rev. Stat. § 173.095(1) provides that "[t]he court may permit an indictment or information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." And Nev. Rev. Stat. § 171.206 provides that "[i]f from the evidence it appears to the magistrate that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the magistrate shall forthwith hold the defendant to answer in the district court; otherwise, the magistrate shall discharge the defendant." And finally, Nev. Rev. Stat. § 173.035(3) provides that "[t]he information must be filed within 15 days after the holding or waiver of the preliminary examination."

### 3.    State court determination

In affirming the denial of Wirth's motions to correct an illegal sentence, the Nevada Court of Appeals held:

> In his motions, Wirth claimed the district court lacked jurisdiction to sentence him because there was no probable cause hearing and the State amended the attempted-sexual-assault charge after the preliminary hearing. Wirth further claimed his sentence for second offense open or gross lewdness was illegal because he did not have a first-offense open-or-gross-lewdness conviction. And Wirth argued the district court should grant his motions because they were unopposed by the State and should be construed as meritorious pursuant to D.C.R. 13(3).

> A motion to correct an illegal sentence "presupposes a valid conviction" and may only challenge the facial legality of the sentence: either the district court was without jurisdiction to impose a sentence or the sentence was imposed in excess of the statutory maximum. Edwards v. State, 112 Nev. 704, 708, 918 P.2d 321, 324 (1996) (quoting Allen v. United States, 495 A.2d 1145, 1149 (D.C. 1985)). A district court may summarily deny a motion to correct an illegal sentence if it raises issues that fall outside the very narrow scope of issues permissible in such motions. Id. at 708 n.2, 918 P.2d at 325 n.2.

> Wirth's claims fell outside the narrow scope of claims permissible in a motion to correct an illegal sentence because they did not implicate the jurisdiction of the district court, see Nev. Const. art. 6, § 6; NRS 171.010, and his sentences are facially legal, see NRS 193.130(2)(d); NRS 193.140; NRS 193.330(1)(a); NRS

25

200.366(3); NRS 201.210(1). Accordingly, the district court did not err by summarily denying his motions.

(ECF No. 24-31 at 2–3.)

### 4.   Analysis

In <u>Tollett v. Henderson</u>, the Supreme Court stated:

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [constitutional] standards [established for effective assistance of counsel].

411 U.S. 258, 267 (1973). Accordingly, "while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief." <u>Id.</u> Ninth Circuit law appears to confirm that the <u>Tollett</u> bar applies to <u>Alford</u> pleas. <u>See</u> <u>Ortberg v. Moody</u>, 961 F.2d 135, 137–38 (9th Cir. 1992). Because Wirth's remaining claims in ground 5 concern events which preceded his <u>Alford</u> plea, they "are not themselves independent grounds for federal collateral relief." <u>Tollett</u>, 411 U.S. at 267.

Further, ground 5 only concerns one apparent valid error of state law—the filing of the information 4 days late—which did not render Wirth's proceedings fundamentally unfair.[15] <u>See</u> <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009) (explaining that "[s]imple errors of state law do not warrant federal habeas relief"); <u>Estelle v. McGuire</u>, 502 U.S. 62, 70 (1991) (explaining that this court must only consider whether the errors were so prejudicial that it rendered

---

[15] It appears that the State properly amended the complaint prior to the justice court's probable cause determination in accordance with Nevada law. <u>See</u> Nev. Rev. Stat. § 173.095(1).

the proceedings fundamentally unfair as to violate due process); Jammal v. Van de Kamp, 926
F.2d 918, 919–20 (9th Cir. 1991) ("The issue for us, always, is whether the state proceedings
satisfied due process; the presence or absence of a state law violation is largely beside the point.").

Therefore, the Nevada Court of Appeals' denial of Wirth's claim was neither contrary to,
nor an unreasonable application of, clearly established federal law and was not based on an
unreasonable determination of the facts. Wirth is not entitled to federal habeas relief for ground 5.

### D.    Ground 16

In ground 16, Wirth alleges that he was denied due process and a fair trial in violation of
the Fifth, Sixth, and Fourteenth Amendments due to the cumulative errors of his counsel.[16] (ECF
No. 11-1 at 81–83.) Cumulative error applies where, "although no single trial error examined in
isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may
still prejudice a defendant." United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996); see
also Parle v. Runnels, 387 F.3d 1030, 1045 (9th Cir. 2004) (explaining that the court must assess
whether the aggregated errors "'so infected the trial with unfairness as to make the resulting
conviction a denial of due process'" (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).
This court has not identified any definite errors on the part of Wirth's counsel, so there are no
errors to cumulate. Wirth is not entitled to federal habeas relief for ground 16.[17]

### V.    CERTIFICATE OF APPEALABILITY

---

[16] This court only considers Wirth's remaining ineffective-assistance-of-trial-counsel claims in
ground 16. (See ECF No. 44 at 7.)

[17] Wirth requests that this court conduct an evidentiary hearing. (ECF No. 11 at 1.) Wirth fails to
explain what evidence would be presented at an evidentiary hearing. Furthermore, this court has
already determined that Wirth is not entitled to relief, and neither further factual development nor
any evidence that may be proffered at an evidentiary hearing would affect this court's reasons for
denying relief. Wirth's request for an evidentiary hearing is denied.

1    This is a final order adverse to Wirth. Rule 11 of the Rules Governing Section 2254 Cases

2 requires this court issue or deny a certificate of appealability (COA). As such, this court has *sua*

3 *sponte* evaluated the remaining claims within the petition for suitability for the issuance of a COA.

4 See 28 U.S.C. § 2253(c); Turner v. Calderon, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to

5 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial

6 showing of the denial of a constitutional right." With respect to claims rejected on the merits, a

7 petitioner "must demonstrate that reasonable jurists would find the district court's assessment of

8 the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing

9 Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only

10 if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a

11 constitutional right and (2) whether this court's procedural ruling was correct. Id.

12    Applying these standards, this court finds that a certificate of appealability is unwarranted.

13 **VI.    CONCLUSION**

14    IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus pursuant to

15 28 U.S.C. § 2254 (ECF No. 11) is DENIED.

16    IT IS FURTHER ORDERED that Petitioner is denied a certificate of appealability.

17    IT IS FURTHER ORDERED that the Clerk of the Court is to enter judgment accordingly

18 and close this case.

19    Dated: November 30, 2022

20    _____

21    RICHARD F. BOULWARE, II
       UNITED STATES DISTRICT JUDGE

22

23